UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNADETTE RUTLEDGE,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 16-cv-01689-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 16, 17 |

Plaintiff Bernadette Rutledge seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment, and REMANDS the case for further proceedings consistent with this order.

## I. BACKGROUND

On December 27, 2004, Plaintiff filed her first application for Title II Disability Insurance Benefits ("DIB"), alleging a disability onset date of March 9, 2003. Administrative Record ("AR") 85. The claims were denied initially and on reconsideration, and, on June 8, 2007, Plaintiff had a hearing before an ALJ. AR 85. Plaintiff resumed part-time work on January 1, 2006, and began working at the substantial gainful activity ("SGA") level on June 1, 2007. AR 87. During the oral hearing, Plaintiff testified that she was currently working as a drug and alcohol counselor, something she had done for approximately seven years. AR 41, 42. Plaintiff

also testified that she had not worked at all in 2004 or 2005; she could recall the sum total of her employment in the last 15 years as a cashier, security guard, cook, office clerk, youth counselor, and career placement counselor. AR 45, 52. Plaintiff had lumbar sprain superimposed on lumbar disc disease, obesity, dysthymic disorder, and chronic knee pain at that time. AR 87-88. The ALJ found that although these impairments more than minimally affected Plaintiff's ability to work, she did not have an impairment or combination thereof that met or medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 88. The ALJ found that Plaintiff had a residual functional capacity ("RFC") to lift 20 pounds occasionally and 20 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; frequently climb, balance, kneel, and crawl; and occasionally stoop and crouch. AR 88. The ALJ also found that Plaintiff could perform simple repetitive tasks. AR 88. On June 28, 2007, the ALJ in that proceeding determined that Plaintiff was not disabled. AR 91.

On April 16, 2012, Plaintiff filed a second application for Title II DIB, alleging disability beginning on April 12, 2010. AR 17. Plaintiff's disability report lists medical conditions of discogenic and degenerative back disorders and affective mood disorders. AR 155. The Social Security Administration ("SSA") denied Plaintiff's applications initially and on reconsideration. AR 121-122,155-156.

On April 19, 2012, Plaintiff was seen at Sausal Creek Outpatient Clinic. AR 386. Insomnia, sadness, hopelessness, and homelessness were among the presenting problems noted. AR 392. Plaintiff reported drinking alcohol and using cannabis for "coping." AR 393. Plaintiff's medications were listed as Lovenox, Vicodin, Fish Oil, Melatonin, and an Albuterol inhaler. AR 392. Plaintiff was diagnosed with depressive disorder NOS and alcohol and cannabis abuse. AR 394.

On July 23, 2012, Plaintiff underwent an internal medicine consultative examination with Dr. Farah Rana, M.D. AR 400. During her examination, Plaintiff complained of lower back pain, pain in her right knee, depression, and asthma. *Id.* Plaintiff reported smoking marijuana and drinking alcohol "occasionally," and also reported being unemployed since 2010. AR 401. Plaintiff reported taking Lovenox for pulmonary embolus, Paxil for depression, Viocdin for back

2

pain, and Albuterol for asthma, which was well controlled. AR 400. Plaintiff had a generally normal examination, but lower back tenderness was noted and straight leg raising test was negative. AR 401. Mild tenderness in the right knee joint was also noted, though Plaintiff's range of motion was within normal limits. AR 401. Dr. Rana found that Plaintiff had the ability to stand and walk six hours in an eight hour work day with breaks; sit for six hours in an eight hour work day with breaks; carry 25 pounds frequently and 50 pounds occasionally; push and pull devices up to 50 pounds; stoop, bend, kneel, crouch, and climb occasionally given her knee and back pain; handle, manipulate, feel, and finger objects without any problem. AR 402. Dr. Rana noted that Plaintiff did not need any assistive devices and was able to take public transportation. AR 402. Plaintiff was diagnosed with lower back pain secondary to degenerative disc/degenerative joint disease, osteoarthritis in the right knee, a history of depression, and a history of asthma. AR 402.

On July 24, 2012, Plaintiff underwent a psychological consultative evaluation with Maria Kerosky, Ph.D. AR 403. Plaintiff stated that she suffered from depression. AR 404. While going through a divorce in 2003, Plaintiff claims she began having panic attacks and "couldn't be around people." AR 404. Plaintiff reported that she had worked as a drug and alcohol counselor until 2010, and also reported other past employment. AR 404. Plaintiff also stated that she drank alcohol occasionally and smoked marijuana to induce her appetite. AR 405. Plaintiff reported living with a friend, being able to perform self-care and domestic activities (bathing/grooming, cleaning, cooking, doing errands "sometimes", and being able to drive). AR 405. She also reported being a "loner," sleeping most of the day, and "feeling in the dumps." AR 405. Plaintiff stated that she had difficulty sleeping, problems with her appetite, and suffered an approximate 30 pound weight loss in the last three to four months. AR 406. Plaintiff also reported that "shadows and voices started three to four months ago." AR 406. Plaintiff stated that she was taking Paroxetine, Lovenox, Hydrocodone, and Trazodone. AR 404. Dr. Kerosky found that Plaintiff was mildly impaired in her ability to maintain persistence, pace, and perform simple repetitive tasks and maintain adequate sustained attention/concentration. AR 408. Dr. Kersoky also found that Plaintiff was moderately to markedly impaired in her ability to maintain adequate sustained attention/concentration during a routine workday; maintain adequate pace and persistence

performing complex tasks; adapt to changes in job routine, hazards, or stressors in a workplace setting; interact appropriately with co-workers, supervisors, and the public on a regular basis; as well as moderately to markedly impaired in her ability to complete a normal workday/workweek without interruptions resulting from her psychiatric condition. AR 408. Plaintiff was diagnosed with major depressive disorder and anxiety disorder NOS. AR 408.

On January 2, 2013, Plaintiff had an MRI of the lumbar spine performed by Dr. Chung Lee. AR 456. The MRI showed mild diffuse disc bulge at L2-3, L3-4, and L4-5; moderate to severe bilateral facet arthropathy at L2-3 and L3-4; and an appearance of moderate central spinal stenosis at L2-3 due to facet patent. AR 457. Dr. Lee concluded that Plaintiff suffered from moderate to severe bilateral facet arthropathy at L2-3 and L3-4 and moderate central spinal stenosis at L2-3. *Id.*

On April 24, 2013, State agency medical examiner L. Pancho, M.D. reviewed the record. AR 130. Dr. Poncho noted Plaintiff's alleged impairments as a "perturding [protruding]" disc, blood clots in lungs, and lower back pain. AR 129. Dr. Pancho concluded that the ALJ ruling should be adopted and that Plaintiff had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for about six hours out of an eight our workday; climb ramps/stairs frequently and ladders/ropes/scaffolds occasionally; as well as balance, stoop, kneel, crouch, or crawl frequently. AR 133. On May 29, 2013, Dr. Pancho noted that additional evidence was submitted that covered the years 2010 to February 2013. AR 130. Specifically, on June 5, 2013, Dr. Pancho noted that an MRI of the lumbar spine revealed a mild diffuse disc bulge at L2. Dr. Pancho reviewed the entire record, including the newly submitted medical evidence, and opined that no change should be made to the prior assessment. AR 130.

On May 7, 2013, State agency medical examiner Harvey Bilik, Psy.D also reviewed the record. AR 131. Dr. Bilik noted Plaintiff's impairment diagnosis as spine disorders and affective disorders. AR 131. Dr. Bilik found Plaintiff moderately impaired in her ability to understand, remember detailed instruction, carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday/workweek without interruptions from psychological symptoms; interact appropriately with the general public and respond appropriately

4

to changes in the work setting. AR 135. Dr. Bilik further concluded that Dr. Kerosky's opinion was an "overestimate of the severity of [] [Plaintiff's] restrictions/limitations and base functioning." AR 136.

On July 29, 2013, Plaintiff requested an administrative hearing, which was held on May 19, 2014. AR 17. Plaintiff testified to "shooting pain in her back" and that she was limited to sitting for no more than 45 minutes, after which she had to stand up and walk. AR 62-81. Plaintiff testified further that a typical day consisted of her waking up, showering, taking her pills, and lying back down, as this activity made her "drowsy." AR 62-81. She stated that her daughter does the household chores, since she is unable, and that she rarely goes to the store. AR 62-81. She testified that she is unable to stand long and frequently urinates, which she believes is related to her fibroids. AR 62-81. Plaintiff stated that she was told that she needed back surgery. AR 62-81. The ALJ noted that Plaintiff looked "normal", and that she was "wearing a nice blouse with glasses perched on top of her head." AR 22.

On December 14, 2015, Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision final. AR 5-13. Plaintiff now seeks judicial review of the final decision.

On December 7, 2016, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt. No. 15.) On January 4, 2017, Defendant filed its cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment. (Def.'s Opp'n, Dkt. No. 16.) Plaintiff filed a reply on January 18, 2017. (Pl.'s Reply, Dkt. No. 17.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the

Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

On August 20, 2014, the ALJ denied Plaintiff's request for benefits. AR 17-27. The ALJ followed the five-step sequential process established to guide Social Security disability

6

determinations. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 12, 2010, the alleged disability onset date. AR 20. At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: obesity, degenerative disc disease of the lumbar spine, chronic knee pain, asthma, and history of pulmonary embolism. AR 20. The ALJ concluded that these impairments more than minimally affected Plaintiff's ability to perform work related activities. AR 20. Additionally, the ALJ found Plaintiff's mental impairments of depressive disorder and anxiety did not cause more than a minimal limitation in Plaintiff's ability to work, and were, therefore, deemed "nonsevere." AR 20. At step three, the ALJ determined that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). AR 21.

At step four, the ALJ determined that Plaintiff had the RFC to perform medium work, as defined by 20 CFR 404.1567(c) and 416.967(c). AR 21. The ALJ further limited Plaintiff to occasional climbing, balancing, kneeling, crawling, stooping, and crouching; also Plaintiff is limited to no more than moderate exposure to fumes, odors, dust and poor ventilation. In her consideration, the ALJ employed a two-step process where she first looked at if the alleged mental impairment "could reasonably be expected to produce [Plaintiff's] . . . symptoms." AR 21. Next the ALJ "evaluate[d] the intensity, persistence, and limiting effects of the [Plaintiff's] symptoms to determine the extent to which they limit the [Plaintiff's] functioning." AR 21. Although the ALJ determined that Plaintiff's impairments could have reasonably caused her alleged symptoms, the ALJ took issue with Plaintiff's credibility regarding the "intensity, persistence, and limiting of effects" of those symptoms. AR 21. First, the ALJ noted that, given Plaintiff's description of her daily activities reported to Dr. Kerosky, her allegation of complete debilitation is not "generally credible." AR 25. Next, the ALJ pointed to the fact that while her first disability application was pending, she reported working at SGA from 2006-2010, which during the second proceeding "she claim[ed] not to remember." AR 25. The ALJ also noted Plaintiff's history of non-compliance with medications and her "normal" appearance at the hearing, and provided "no indication of any

7

mental or physical symptoms." AR 25.

Regarding the medical opinions, the ALJ gave Dr. Rana's opinion great weight and assigned less weight to Dr. Pancho's opinion. AR 23. Dr. Rana's opinion was given great weight because "it is consistent with the preponderance of the medical evidence of record as a whole." AR 23. Dr. Rana was also given great weight because in addition to having "personally examined [] [Plaintiff]", his findings were not "inconsistent with the x-rays and MRI of [] [Plaintiff's] lumbar spine." AR 23. Dr. Pancho was given less weight because he only reviewed medical records and did not have the benefit of an opinion based on physical examination. AR 23. Regarding Plaintiff's mental health, the ALJ found Plaintiff's alleged impairments only had a minimal effect on her ability to work, and were therefore nonsevere. AR 24. Thus, the ALJ determined that, to the extent that Dr. Kerosky and Dr. Bilik found moderate to marked limitations, these findings were contradicted by Plaintiff's "lack of intensive mental treatment." AR 24. Additionally, the ALJ noted that even if her determinations were more in line with Dr. Kerosky and she limited Plaintiff to simple routine tasks with occasional public contact, the number of jobs in the national economy available to Plaintiff would still be significant. AR 24.

Finally, at step five, based on Plaintiff's physical RFC, the ALJ determined that Plaintiff was capable of performing past relevant work including work as a counselor, social service aide, and cashier/security. AR 25. The ALJ also determined that jobs existed in significant numbers in the national economy that Plaintiff was capable of performing even if she was limited to simple repetitive tasks with occasional public contact, including work as an office helper, assembler, and stocker. AR 25. The ALJ, therefore, concluded that Plaintiff was not under a disability at any time from April 12, 2010 through August 20, 2014, the date of the ALJ's decision. AR 27.

## IV. DISCUSSION

In her motion for summary judgment, Plaintiff argues that the ALJ erred in denying her application for social security benefits for four reasons: 1) the ALJ erred in applying *Chavez* to show changed circumstances; 2) the ALJ erred in finding Plaintiff's mental impairments non-severe; 3) the ALJ erred in evaluating Plaintiff's credibility; and 4) the ALJ made factual errors that may have adversely affected Plaintiff's claim.

8

### A. Changed Circumstances

Plaintiff argues that the ALJ erred in applying *Chavez* to show changed circumstances, but then found a lesser degree of disability. (Pl.'s Mot. at 7.) Plaintiff argues that a finding of "changed circumstances" should necessarily indicate greater disability. *Id*. at 7-8. In *Chavez*, the court found that a plaintiff, "in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988)(*citation omitted*). Here, the ALJ noted that in order to show a change of circumstance, Plaintiff would have to show that her impairments had become more severe. AR 17. The ALJ also acknowledged that the presumption of "not disabled" determined by the first ALJ should be defeated "only if the record shows deterioration in the [] [Plaintiff's] condition since the June 28, 2007 decision." AR 18. Then the ALJ found that there was a change of circumstances affecting the issue of disability regarding the unadjudicated period from April 12, 2010 to August 20, 2014. *Id.*

*Chavez* does not require a finding of disability where there is a change in circumstances. 844 F.2d at 694. Rather, a change in circumstances occurs only when the change is "legally relevant" to the disability determination. *Id.* In short, changed circumstances require that the plaintiff's condition has worsened. *Id.* at 693. Here, the ALJ's finding of changed circumstances under *Chavez* should dictate that there has been deterioration in Plaintiff's condition. *See* AR 18. Instead, the ALJ concluded that Plaintiff had a less restrictive RFC than she had in the 2007 proceeding, indicating an improvement in her condition. AR 21. Since only the worsening of a claimant's condition is legally relevant under *Chavez*, any error could be harmless had the ALJ made only minimal changes to the 2007 RFC or left it the same. Instead, the ALJ fails to explain how her finding of changed circumstances squared with the determination that Plaintiff was now capable of greater rigor in work activity.

Notwithstanding, it is unclear whether the ALJ's finding is harmless, but in light of the errors outlined below that warrant remand, the Court remands this issue for further proceedings to reassess Plaintiff's RFC and whether her condition has worsened since the earlier proceeding.

9

**B. Mental Impairment**

Plaintiff argues that the ALJ erred in finding that her mental impairments only had a mild effect on her ability to work. (Pl.'s Mot. at 8-9.) Step two in the five step sequential process for evaluating whether a claimant is disabled is to determine whether a claimant's condition rises to the level of impairment severity listed in 20 CFR 404.1520(c) and 416.920(c). *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996). "The ruling states that 'an impairment is found not severe ... when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)(*quoting* SSR 85–28.) "Step two. . . is 'a de minimis screening device [used] to dispose of groundless claims,' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *See* S.S.R. 85–28

Here, the ALJ determined that the effect of Plaintiff's depression was mild, because she reported that the medication she was taking was effective. AR 24. Both Dr. Kerosky and Dr. Bilik found that Plaintiff experienced moderate limitations in her ability to perform work activity. AR 135, 408. Additionally, Dr. Kerosky, the examining physician, found that Plaintiff also experienced some marked limitations in her ability to work. AR 408. Notably, Dr. Kerosky found that Plaintiff was moderately to markedly impaired in her ability to complete a normal workday/workweek without interruptions due to her psychiatric conditions. AR 408. Dr. Bilik also found Plaintiff moderately impaired in this area. AR 135. "Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012)(*quotations omitted*). Here, the ALJ discounts the objective medical opinions of the examining and reviewing physicians as merely reflecting Plaintiff's subjective complaints. As such, the ALJ relies on Plaintiff's statements that she notices some improvement in her mood with her medications, but does not take into account the professional medical opinions that Plaintiff experiences moderate to marked limitations while using medication. Thus, the ALJ erred in finding Plaintiff's mental health

10

impairments were non-severe on the basis of reported improvement with medication.

The ALJ also found that the moderate and marked limitations identified by the consultative experts were without merit, since there was no evidence of hospitalization or therapy. AR 24. This is not entirely accurate, given that Plaintiff was seen at Sausal Creek in April 2012, where she received a crisis assessment. AR 386. At that time, she was assigned a GAF score of 55, which indicates a moderate difficulty in mental functioning. AR 389; *see Atkinson v. Astrue*, No. 2:10–cv–02072–KJN, 2011 WL 4085414, at *10 (E.D. Cal. Sept. 13, 2011). While this was the only instance of mental health treatment since Plaintiff's alleged disability onset date, it was consistent with the medical opinions. Therefore, it was unreasonable for the ALJ to find that the moderate to marked limitations were unsupported simply because Plaintiff did not obtain additional treatment nor require hospitalization.

In light of the foregoing, the ALJ erred in finding that Plaintiff's mental health impairments were non-severe, and, at the very least, the moderate limitations agreed upon by Drs. Kerosky and Bilik should be included in Plaintiff's RFC on remand.

### C. Credibility

Here, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility since the entire record was not considered and no clear and convincing reasons supported by substantial evidence were provided. (Pl.'s Mot. at 10-11.) In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir.2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints; general findings are

11

insufficient. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

First, the ALJ found Plaintiff's claim of complete debilitation not "generally credible." AR 25. Although it is the ALJ's responsibility to make credibility findings, "testimony must not be entirely discounted simply because there was a lack of objective findings." *Hudson v. Bowen*, 849 F.2d 433, 435 (9th Cir. 1988). The ALJ took issue with the fact that Plaintiff, in 2012, reported "extensive activities of daily living" to Dr. Kerosky, but, at the 2014 hearing, reported minimal activity. AR 25. Although these testimonies are inconsistent, an MRI done in 2013 showed that Plaintiff's back condition had changed since she was examined by Dr. Kerosky, and so are not inconsistent with the complete record. AR 456. Furthermore, the two- year time span provides ample time for changes to take place in an impaired individual's daily activities. Thus, the ALJ erred in finding Plaintiff's testimony that her daily activities had worsened was not credible, because she failed to consider the 2013 MRI, which showed that her back condition had worsened.

Second, the ALJ took issue with the fact that Plaintiff claimed not to remember her work history from 2006-2010. AR 25. At the 2014 hearing, Plaintiff recalled her last job as a drug and alcohol counselor and another job at East Bay Recovery. AR 63-65. She recalled her duties and responsibilities at these jobs and the demographic with which she worked. AR 63-65. She also recalled employment at Project Pride and could generally describe the work she did within a given year even without providing the specific employer's name. AR 63-65. She could also recall that she was not working in 2004 or 2005. AR 63-65. Plaintiff went on to testify that she worked from 2007-2010 and was terminated because she "called in sick too much." AR 63. Overall, the employment history detailed by Plaintiff in the 2014 hearing was similar to and consistent with her testimony in the 2007 proceedings. AR 63-65; AR 41-46. Thus, the ALJ erred in finding that Plaintiff was not credible because she was unable to remember her work history from 2006-2010.

Third, the ALJ discredited Plaintiff's testimony based her history of non-compliance with medications. AR 25. It is unclear what affect the ALJ is proposing that this history has on Plaintiff's credibility because the ALJ did not elaborate. *See* AR 25. Thus, the ALJ erred only insofar as she omitted further explanation of exactly what bearing this history has on Plaintiff's

12

credibility.

Lastly, Plaintiff claims that ALJ erred in noting her observation that Plaintiff appeared "normal at the hearing, with no indication of any mental or physical symptoms." (Pl.'s Mot. at 11.) *Matney* permits the ALJ to consider plaintiff's "demeanor and appearance at the hearing" along with relevant medical evidence in a disability determination. *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). As such, this observation alone is not error given that the ALJ expressly stated that these observations were not the entire basis of the credibility assessment. AR 25.

In light of the foregoing, the ALJ improperly discredited Plaintiff's testimony, because she failed to identify sufficient evidence to undermine the claimant's subjective complaints. Remand is not an opportunity to correct the original decision's deficiencies outlined above in an attempt to justify the original result. Specifically, the ALJ should not attempt to further discredit Plaintiff's testimony regarding the severity of her symptoms. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398-99 (9th Cir. 1988) ("Requiring the ALJs to specify any factors discrediting a claimant at the first opportunity helps to improve the performance of the ALJs by discouraging them from 'reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence in the record that suggests an opposite result.'").

### D. Factual Errors

Plaintiff argues that the ALJ made factual errors that may have adversely affected Plaintiff's claim. (Pl.'s Mot. at 11-12.) Dr. Rana examined Plaintiff on July 23, 2012. AR 400. The ALJ, in her decision, stated that this examination took place on July 23, 2013. AR 23. Plaintiff had a MRI of the lumbar spine on January 2, 2013, which showed that Plaintiff had a moderate to severe bilateral facet arthropathy at L2-3 and L4-5, and moderate central spinal stenosis at L2. AR 456. Defendant argues that because Dr. Rana referred to a 2012 MRI of the lumbosacral spine that noted a prolapsed disc at L4-5, and this 2012 MRI also noted degenerative disc disease was present at multiple levels (although Dr. Rana did not include this information in his write-up), that the error was harmless. (Def.'s Opp'n at 12-13.) The Court disagrees.

The results from the 2013 MRI could have influenced Dr. Rana's evaluation in considering

13

the extent of Plaintiff's limitations and ability. The 2012 MRI, to which Defendant refers, only highlights the L4-L5 levels, while the 2013 MRI shows two different conditions at levels not noted by Dr. Rana. *See* AR 400; AR 456. For these reasons, the Court remands this issue for further proceedings, such that all medical opinions have the benefit of evaluation based on a complete record, particularly given that Dr. Rana's opinion was given great weight in the ALJ's decision.

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment. Accordingly, the action is REMANDED to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings, including a new administrative hearing and new consultative physical evaluation, consistent with this order.

IT IS SO ORDERED.

Dated: September 25, 2017

KANDIS A. WESTMORE
United States Magistrate Judge